IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**JOHN DOE,**

      Plaintiff,                           Civ. Action No. 3:22-cv-00346

v.

**MARSHALL UNIVERSITY
BOARD OF GOVERNORS; and,
DEBRA HART, in her individual and official capacity,**

      Defendants.

**PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff filed a fact-laden Complaint describing in significant detail how Defendant Marshall University Board of Governors ("Marshall") and Defendant Debra Hart ("Hart") have engaged in an ongoing campaign of discriminating and retaliating against Plaintiff for exercising his rights and defending himself against false Title IX complaints based on his sex. Given his well-pleaded Complaint, and for the reasons that follow, this Court should deny Defendant Marshall University Board of Governors and Defendant Debra Hart's respective motions to dismiss, which raise issues that are more properly left for summary judgment or trial.

**BACKGROUND**

Starting in 2020, W.J., a fellow student and recent romantic partner of Plaintiff, filed a false complaint with Marshall's Title IX Office. Marshall opened an investigation against him, but when Plaintiff exercised his rights and requested evidence from his accuser, she voluntarily dismissed her claim.

Thereafter Hart, as Marshall's Title IX Coordinator, began a yet-to-be stopped campaign against Plaintiff. Despite the dismissal of the 2020 complaint, Hart tried to enforce a punitive and

unauthorized no-contact order against Plaintiff, which she was later forced to withdraw by Marshall's general counsel. Hart then engaged in improper *ex parte* communications with W.J. and encouraged her to revive her complaint, even attempting to extend the appeal deadlines. Frustrated by her inability to revive W.J.'s complaint, Hart then began soliciting additional complaints against Plaintiff, first dredging up a frivolous complaint alleging that Plaintiff "used an offensive racial word" while lip syncing a popular rap song and — once that claim was dismissed — the present complaint from Jane Roe.

  Roe has admitted that she only filed her complaint against Plaintiff because she was apprised that the complaint brought by W.J. in 2020 was dismissed. Despite knowing Roe filed her complaint for a retaliatory reason, Marshall and Hart pursued — and are continuing to pursue — Roe's claim. Even worse, they have pursued that claim in a disturbingly discriminatory manner.

  Hart selected a friend, Dr. Brooks, to conduct the investigation into Roe's claim. In that role, Dr. Brooks has repeatedly violated Marshall's own Title IX policy and has selectively enforced it against Plaintiff in a number of ways. Dr. Brooks undertook an unduly lengthy investigation and ultimately drafted a report that, among other things, (1) relied on improper "prior conduct" "evidence," (2) relied on improper personal opinions and evidence not based on direct observations or reasonable inferences, (3) relied on prejudicial statements that are not related to Roe's complaint, (4) penalized Plaintiff and his girlfriend — the only other eye witness to the event alleged in Roe's complaint — for exercising their right not to answer questions about alcohol use, (5) failed to consider relevant evidence that would favor Plaintiff, (6) applied dramatically less scrutiny to Roe's account of events than to Plaintiff's, (7) denied the Plaintiff the opportunity to pose questions to witness and suggest additional witnesses or evidence for

investigation and, most significantly, (8) usurped the role of the Review Panel and made factual findings that Plaintiff committed the acts Roe alleged in her complaint.

When Plaintiff learned of Jane Roe's admission that she only filed her complaint against him because she learned W.J.'s 2020 complaint had been dismissed, he filed a cross-complaint with the Title IX Office alleging retaliation. But despite Roe's candid admission, the investigator of the cross-complaint found that Roe was not responsible for retaliation.

More than two years after this process began, Marshall and Hart continue to retaliate and discriminate against Plaintiff. Despite scheduling Review Panel Hearings on Roe's complaint, the Defendants have, among other things, failed to timely provide Plaintiff with a witness list, granted an *ex parte* request to allow Roe to appear remotely — without giving Plaintiff the opportunity to object — and failed to disqualify participants in the review process who have a clear conflict of interest.

Plaintiff's complaint lays out these facts in great detail and asserts that this conduct allows for a reasonable inference that the Defendants are discriminating against Plaintiff on the basis of sex. The Defendants have moved to dismiss Plaintiff's complaint, asserting that he lacks standing, has failed to sufficiently allege that the discrimination was based on sex, and that they are entitled to immunity for some of Plaintiff's claims.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## I. Plaintiff has standing.

John Doe has sufficiently alleged the elements of constitutional standing in this case — including injury. "In order to satisfy the constitutional component of standing, a party must meet three requirements:

> (1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (quotations and citation omitted). As alleged in significant detail, Plaintiff has, since 2020, been repeatedly targeted by Marshall and its Title IX Coordinator, Defendant Debra Hart. And Plaintiff has explained in factual detail how he has suffered existing injury as a result of Defendants' continuing acts.

*1. John Doe has standing to make a Title IX claim.*

In their motions, Defendants assert that because two of the three complaints against him have been dismissed, and because that the University has yet to conduct the Review Panel Hearing on the third complaint, that Plaintiff has not yet suffered an injury in fact. Not true.

Despite Defendants' assertions, Plaintiff's Complaint plainly alleges in detail that he has *already* suffered substantial harm due to Marshall's unlawful actions. With respect to the Title IX retaliation claim asserted in Count I, Plaintiff alleges, among other things, that Marshall, through its Title IX Coordinator Hart, has solicited additional Title IX complaints against him and has allowed Jane Roe's complaint to move forward against him despite the fact that it was only filed *because* the prior complaints of W.J. and S.S. were dismissed. Compl. ¶¶ 172–76. As a result of these actions, Plaintiff has already suffered injuries including damage to, and delays in, his pursuit of higher education, fear, anxiety, humiliation, and emotional distress. *Id.* at ¶ 177.

4

With respect to the selective enforcement claim asserted in Count II, Plaintiff alleges that Marshall has favored Jane Roe (a female) in the application of its Title IX policy while disregarding the policy with respect to Plaintiff (a male). *Id.* at ¶¶ 182–83. Plaintiff has already suffered, and continues to suffer, from injuries as a result of these actions. He has been subject to an ongoing and untimely investigation, with the weight of his education and professional career dependent on the outcome, and suffers from fear, anxiety, humiliation, reputational harm, and emotional distress. *Id.* at ¶ 184. Even if Marshall were to see the error of its ways and cure every procedural defect immediately, this damage — both practically and as a matter of constitutional standing — is already done.

In support of their mistaken argument that Plaintiff's Complaint is premature, Defendants contend that the impending Review Panel Hearing "provides the opportunity to correct any mistakes that may have occurred." ECF No. 10, at 4; ECF No. 12, at 4 (quoting *Gonzales v. Marshall Univ. Bd. Of Governors*, No. CV 3:18-0235, 2019 WL 3432533, at *6 (S.D.W. Va. July 30, 2019)). This quote, however, is taken out of context. This Court's decision in *Gonzales* related to a motion for summary judgment on a student's deliberate indifference claim against Marshall under Title IX. In that case, the Court found that procedural flaws were not so great that they could lead to a finding of deliberate indifference because, in part, the student was given an opportunity file a formal appeal and chose not to do so. But the Court *did not* conclude that the student lacked standing simply because any errors could be corrected on appeal. Rather, the Court held that the student's failure to appeal undermined her claims that the process was egregiously flawed. That is different from the pleading in this case. Here, Plaintiff has not foregone any administrative remedy, rendering the reasoning of *Gonzalez* entirely inapposite.

5

Ultimately, Marshall's standing argument rests on two unsupportable premises.  First, Marshall asserts that the Plaintiff must suffer through Marshall's biased administrative process before he can bring his Title IX claims to federal court. ECF No. 12, at 4 ("The administrative process needs to be completed. Until that is complete, the Plaintiff does not have standing to sue."). But it has long been established that no such exhaustion is required under Title IX. *See Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009). Second, Marshall's motion suggests that the *only* cognizable injury a Title IX plaintiff can suffer is a formal disciplinary action from the school. But this argument, too, is without merit, as it suggests that universities are free to discriminate and retaliate against students in the Title IX process so long as the university does not ultimately and finally impose discipline. Such a holding is not in line with the purpose or text of remedial statutes like Title IX and is belied by decisions granting pre-administrative hearing injunctive relief. *See, e.g.*, *Doe v. Rensselaer Polytechnic Inst.*, No. 1:20-CV-1185, 2020 WL 6118492 (N.D.N.Y. Oct. 16, 2020).

    2.  *John Doe has standing to make a § 1983 Due Process claim.*

Plaintiff's due process claim is also cognizable. The Complaint alleges, among other things, that (1) he has been denied of fair and impartial investigators,  (2) the complaint filed against him has not be adjudicated in a timely manner; (3) Marshall's own procedural rules have not been followed; (4) he has been denied the right to cross-examine witnesses against him, (5) there is a Review Panel Member with a conflict of interest; and, that (6) Hart engaged in actual and apparent bias in the investigative process. *See, e.g.,* Compl. ¶¶ 60–133 (biased investigation); ¶¶ 134–45 (untimely investigation); ¶¶ 161–63 (failure to provide list of witnesses, granting to Roe's motion to appear remotely); ¶ 164 (failure to rule on Plaintiff's request to disqualify).

These due process denials have already harmed Plaintiff via exposure to a lengthy investigative process, embarrassment, anxiety, fear, and reputational harm.

Again, despite Defendants' bald assertions, Plaintiff is not required to wait until the university's administrative process is wholly complete *before* bringing his claims to court. *See Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 826 (E.D. Mich. 2018) (granting a preliminary injunction before the completion of the university's administrative process and noting "Defendants essentially ask the Court to sit back and wait ... But, at this very moment, the University may be denying Plaintiff due process protections to which he is entitled. The Court cannot, and will not, simply stand by as the fruit continues to rot on the tree.").[1]

Moreover, even if Defendants were correct in asserting that Plaintiff's due process injury is hypothetical, precedent "makes clear that a deprivation of procedural due process is an independent constitutional tort, actionable under s 1983 with or without proof of actual injury." *Burt v. Abel*, 585 F.3d 613, 616 (4th Cir. 1978) (citing *Cary v. Piphus*, 435 U.S. 247, 266–67 (1978)). Accordingly, dismissal of Plaintiff's due process claim for lack of standing is inappropriate

As with the due process claim, Plaintiff has already suffered as a result of Defendant Hart's discrimination against him in violation of the Equal Protection Clause. Plaintiff has had to deal with the exposure to a length and biased investigative process, embarrassment, anxiety, fear, and reputational harm. These harms are not hypothetical, but rather are plausibly pleaded as concrete and actual.

---

[1] This case was vacated and remanded sub nom., *Doe v. Bd. of Regents of Univ. of Michigan*, No. 18-1870, 2019 WL 3501814 (6th Cir. Apr. 10, 2019), because while on appeal the University of Michigan implemented a new policy that applied to Doe's case.

    3.  *Plaintiff has standing to make his state law claims.*[2]

While not addressed by the Defendant in their motions, Plaintiff has also sufficiently alleged an injury in fact with respect to his state law claims for aiding and abetting discrimination under the West Virginia Human Rights Act and intentional infliction of emotional distress ("IIED") against Hart.

As to the aiding and abetting claim, consistent with Plaintiff's above submissions, Hart's conduct has exposed him an unduly lengthy investigative process, embarrassment, anxiety, fear, and reputational harm.

With respect to the IIED claim, Plaintiff has alleged that he has already suffered severe emotional distress as a direct result of Hart's discriminatory and retaliatory campaign against him.

In sum, because the Complaint clearly alleges that Plaintiff has already suffered a harm, the Defendants' argument that his injury is purely hypothetical is without merit. As evidenced by the foregoing, Plaintiff's Complaint repeatedly asserts that he has already suffered and continues to suffer harm as a result of the Defendants' actions. In fact, the motion only makes clear that Plaintiff is likely to continue to suffer additional harms, should the Defendants be permitted to continue their unlawful behavior. Defendants' arguments concerning the extent of Plaintiff's damages are therefore best left for summary judgment or trial.

## II.    Plaintiff's Title IX claims are valid and timely.

Plaintiff's Complaint sufficiently alleges that Marshall has violated Title IX's prohibition against discrimination on the basis of sex. With regard to the retaliation claim, Plaintiff is

---

[2] As noted *infra,* Plaintiff voluntarily dismisses his WVHRA claim against Marshall and his negligence claim against Hart.

required only to allege (1) that he engaged in a protected activity under the statute, and (2) that as a result of that protected activity, he "suffered an adverse action attributable to the defendant educational institution." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018). Plaintiff alleges both elements.

As to the first element, Plaintiff's Complaint plainly states that he has engaged in protected activity, including exercising his rights in order to obtain the dismissal of prior Title IX complaints that were lodged against him. Indeed, Plaintiff Complaint alleges that he was successful in obtaining the dismissal of W.J.'s, and later S.S.'s, complaint. Compl. ¶¶ 171.

As to the second element, Plaintiff's Complaint alleges that as a result of Plaintiff engaging in that protected activity — obtaining the dismissal of W.J. and S.S.'s complaints — "Marshall retaliated against Plaintiff based on his sex by soliciting new Title IX complaints against Plaintiff from female students within Plaintiff's friend-cohort." *Id.* at ¶ 171; *see* ¶¶ 31–37 (Hart solicited complaints from S.S.). The Complaint further alleges that Marshall's Title IX Coordinator, Hart, solicited Jane Roe to file the third Title IX complaint against him. *Id.* at ¶ 17-3–75; *see* ¶ 37 (solicited claim from Jane Roe). Moreover, Marshall retaliated against Plaintiff by allowing Jane Roe's complaint to move forward against him, despite the fact that she admitted that she only filed it in response to the dismissal of the prior complaints and Hart's solicitation. *Id.* at ¶ 176.

As the Complaint explains in detail, Plaintiff has suffered an adverse action in form of the continued, sex-biased investigations into him, damage to and delays in his pursuit of higher education, fear, anxiety, humiliation, and emotional distress. *Id.* at ¶ 177. Should the Defendant's behavior continue, he is likely to suffer even greater injury.

9

With respect to his selective enforcement claim, Plaintiff merely needs to allege facts that "give rise to a plausible inference of discrimination that was caused by his sex." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021). In *Sheppard*, the Court recognized that one way of pleading discrimination based on sex may be to plead the "selective enforcement" theory identified in *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). As described in *Yusuf*, a selective enforcement claim asserts that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715.

As previously noted, Plaintiff's Complaint plausibly alleges that Marshall selectively enforced Title IX against him based on his sex by intentionally disregarding its own rules and engaging in the following acts allowing the investigator to conduct a biased investigation and to usurp the role of the Review Panel, favoring Roe over Plaintiff in the investigation process, granting Roe's *ex parte* request to testify remotely, expecting Plaintiff to proceed with the hearing against him despite Roe's failure to provide the required witness list, and continuing to allow Hart to continue to preside over Roe's complaint.

As stated within the Complaint, "[i]n the context of Marshall's numerous actions taken against Plaintiff while favoring Jane Roe in the application of its Policy, it is reasonable to infer that but for Plaintiff being male, Marshall would not have repeatedly disregarded its own Policy to Plaintiff's detriment." Compl. ¶ 183.

Moreover, as thoroughly presented above, Plaintiff has already suffered an injury as a result of this discrimination and thus his claims are not premature.[3]

---

[3] Plaintiff notes that Marshall's citation to *Clark v. Liberty University, Inc.*, No. 6:20-CV-58, 2021 WL 1827256, at *7 (W.D. Va. May 7, 2021), for the proposition that Plaintiff cannot plausibly allege a claim under Title IX because he has not suffered a formal disciplinary

10

Because the Court is required to accept the facts as alleged in Plaintiff's Complaint as true, and drawing all reasonable inferences in his favor, the Court should deny Marshall's motion to dismiss his Title IX claims. As before, Defendants arguments are best left for summary judgment or trial.

### III. Plaintiff has adequately stated a claim under § 1983 against Hart for violating the Equal Protection Clause.

An individual's right to be free from discrimination on the basis of sex by a state actor is both constitutionally protected and clearly established. *See J.E.B.* v. *Alabama*, 511 U.S. 127, 130–31 (1994). Such discrimination is actionable through § 1983.

In support of her motion to dismiss, Hart argues that Plaintiff "has no allegations that a female student would have been treated differently." ECF No. 10, at 8. This is contradicted by Plaintiff's Complaint which alleges in detail:

> Defendant Hart subjected Plaintiff to violations of his clearly established right to the equal protection of law by punishing him and threatening to further punish him for using Marshall's Title IX disciplinary process based on his sex for the reasons stated above, *where Jane Roe has been treated markedly differently*.

Compl. ¶ 199 (emphasis added). Indeed, a review of the Complaint shows Plaintiff has not just alleged that a female student *would have been treated differently*, but that a female student *was and continues to be* treated differently.

As explained throughout this memorandum, Plaintiff has both explicitly pleaded that the discrimination was based on sex and the facts in the Complaint can be fairly read to allege that Jane Roe, as a female, was treated differently in the investigative process and that Hart targeted Plaintiff because of his sex. Accordingly, this Court should find that Plaintiff has adequately

---

consequence is inapposite. *See* ECF No. 12, at 12. The plaintiff in *Clark* submitted an "Title IX erroneous outcome claim." Such a claim is not before the Court in this case.

11

stated a §1983 claim against Hart for violating the Equal Protection Clause of the 14th Amendment.

### IV. Plaintiff has adequately stated a claim under § 1983 against Hart for violating the Due Process Clause.

To make a procedural due process claim, a plaintiff must allege "that he had a constitutionally cognizable life, liberty, or property interest"; (2) "that the deprivation of that interest was caused by some form of state action"; and (3) "that the procedures employed were constitutionally inadequate." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (cleaned up). "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164, (1998) (citing *Bd. of Regents of State Colleges v Roth*, 408 U.S. 564, 577 (1972)).

West Virginia has long recognized that a student has "a sufficient property interest in the continuation and completion of his medical education to warrant the imposition of minimal procedural due process protections." *Evans v. West Va. Bd. of Regents*, 271 S.E.2d 778, 782 (W. Va. 1980).

Accordingly, Plaintiff has a property interest in the continuation and completion of his medical education at Marshall, and that interest entitles him to due process protections. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978).

While Hart cites to *Al-Asbahi* for the proposition that Plaintiff need only be given "notice of the faculty's dissatisfaction and potential risk of his dismissal," and that "the final dismissal decision must be made carefully and deliberately," ECF No. 10, at 7 (citing *Al-Asbahi v. W. Virginia Univ. Bd. of Governors*, No. 1:15CV144, 2017 WL 402983, at *17 (N.D.W. Va. Jan.

12

30, 2017), *aff'd,* 724 F. App'x 266 (4th Cir. 2018)), she fails to explain that the *Al-Ashabi* court was discussing the standard for dismissals based on *academic performance*. That is not the issue in this case.

Here, Plaintiff has stated a § 1983 claim. For disciplinary hearings, a student is, *at a minimum*, entitled to "oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have an opportunity to present his side of the store." *Horowitz*, 435 U.S. at 85 (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)). What additional process a student may be entitled to is ultimately determined by the court after weighing three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In this case, Plaintiff's interest is undoubtedly significant, and Plaintiff is greatly at risk of being erroneously deprived of that interest should Hart and Marshall to use biased procedures. *See Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017) (noting that disciplinary sanctions could have a substantial and lasting impact on students' "'personal lives, educational and employment opportunities, and reputations in the community'") (quoting *Doe v. Cummings*, 662 F. App'x 437, 446 (6th Cir. 2016) (unpublished)).

Indeed, Hart, in her role as the Title IX Coordinator for Marshall has deprived, and continues to deprive, Plaintiff of that interest by, among other things, denying him fair and impartial investigators and adjudicators, restricting his ability to present a full and fair defense against Jane Roe's complaint, subjecting him to an untimely investigation, and selectively

13

applying the university's own procedural rules. Finally, provision of substitute procedural safeguards that would protect Plaintiff's interest would have been simpler and less burdensome. Although it is often argued that universities have an interest in preserving administrative resources, *see Plummer*, 860 F.3d at 773, it is apparent that Hart has expended additional administrative resources seeking out complaints to *initiate* prosecution of Plaintiff.

Viewed in the light most favorable to Plaintiff, it is clear that Hart, as Title IX Coordinator, has provided Plaintiff with insufficient process and plans to continue to do the same. These actions directly harm Plaintiff's interest in his education by threatening his ability to complete his education and, in turn, threaten his ability to pursue a medical career. Accepting the facts pleaded as true, it is apparent that Plaintiff has sufficiently stated a claim that Hart has violated his due process rights. The motion to dismiss on the pleadings should be denied.

### V. Plaintiff's § 1983 claims against Hart are not barred by qualified immunity at this early stage.

"'Qualified immunity shields government officials performing discretionary functions' from personal liability for damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 699 (4th Cir. 2018) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)). Such officials "are entitled to qualified immunity under §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Id.*(quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

Hart argues that she was acting within her duties Title IX coordinator, ECF No. 10, at 5–6, but she herself notes that "[a] government official 'who performs an act clearly established to be beyond the scope of his discretionary authority' is not entitled to qualified immunity defense,"

14

*id.* (quoting *In re Allen*, 106 F. 3d 582, 593 (4th Cir. 1997). As Title IX Coordinator, it was Hart's duty to "coordinate the recipient's compliance with Title IX." ECF No. 10, at 5. To the extent that discrimination on the basis of sex, selective enforcement, and retaliation based on a protected activity are all violations of Title IX, it is *clearly established* that discriminating and retaliating against a student and arranging the selective enforcement of Title IX is beyond the scope of her authority as someone whose job is to coordinate compliance with the law.

What is more, Hart continues to erroneously argue that she should be granted qualified immunity because her "actions did not violate a constitutional right of Plaintiff"; however, as addressed in the preceding sections, Plaintiff has sufficiently alleged that Hart has already deprived Plaintiff of his due process rights related to his property interest in his education and has already discriminated against him on the basis of sex. Both of those actions violate Plaintiff's constitutional rights here and now.

Moreover, both of those constitutional rights have long been clearly established. *See J.E.B.*, 511 U.S. 130–31 (clearly establishing, in 1994, that "[i]ntentional discrimination on the basis of gender by state actors violates the Equal Protection Clause[.]"); *Klug v. Marshall Univ. Joan C. Edwards Sch. of Med.*, No. CV 3:18-0711, 2019 WL 1386403, at *6 (S.D.W. Va. Mar. 27, 2019) (recognizing that the right to be free from discrimination based on gender is clearly established); *Phillips*, 524 U.S. at 164 (holding that state law creates the property interest and the due process clause protects it); *Evans*, 271 S.E.2d at 782 (clearly establishing, in 1980, that West Virginia recognizes medical student's property right in continuing and completing his medical education).

15

### VI. State law qualified immunity does not shield Hart from suit on Plaintiff's intentional infliction of emotional distress claim.[4]

Under West Virginia's "doctrine of qualified immunity, the discretionary actions of governmental agencies, officials and employees performed in an official capacity are shielded from civil liability so long as the actions do not violate a clearly established law or constitutional duty." *W. Va. State Police v. Hughes*, 796 S.E.2d 193, 198 (W. Va. 2017). "Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting Syllabus, in part, *Bennett v. Coffman*, 361 S.E.2d 465 (1987)).

Yet as Hart herself quotes, a government official "who performance an act clearly established to be beyond the scope of his discretionary authority" is not entitled to the defense. ECF No 10, at 5 (quoting *In re* Allen, 106 F.3d 582, 593 (4th Cir. 1997)). Because the Complaint plainly alleges that she was acting beyond the scope of her discretionary authority by targeting the Plaintiff and continually discriminating against him on the basis of sex, she is not entitled to immunity from Plaintiff's state law claim of intentional infliction of emotional distress.[5]

Hart further argues that Plaintiff has failed to allege that she acted with fraud, malicious intent, or to otherwise assert factual allegations that are oppressive "because no disciplinary

---

[4] Plaintiff voluntarily dismisses the negligence claim against Hart asserted in Count VII of the Complaint.

[5] Hart only argues that she is entitled to state qualified immunity with respect to Plaintiff's intentional infliction of emotional distress and negligence claims—not the aiding and abetting claim. Nonetheless, inasmuch as Plaintiff has pleaded that Hart aided and abetted discrimination on the basis of sex, conduct that violates clearly established statutory and constitutional rights of which a reasonable person would have known, she is not entitled to qualified immunity on the aiding and abetting discrimination under the WVHRA. S*ee Klug v. Marshall Univ. Joan C. Edwards Sch. of Med.*, No. CV 3:18-0711, 2019 WL 1386403, at *6 (S.D.W. Va. Mar. 27, 2019) ("As Plaintiff's allegations include violations of clearly established rights regarding sex and disability discrimination that a reasonable person would have known, the Court denies Defendant Mozaffari's motion to dismiss these claims based upon qualified immunity.").

action has even been taken against him." ECF No. 10, at 10–11. This assertion is obviously contradicted by Plaintiff's Complaint, which is based, almost entirely, on Hart maliciously targeting Plaintiff for prosecution under Title IX and is simply a recitation of the Defendants' erroneous belief that they can only be sued if they formally discipline Plaintiff.

Any reasonable official in Hart's position would know that it is beyond the scope of her authority to target and discriminate against a student. Her actions were "fraudulent, malicious, or otherwise oppressive," and Plaintiff's Complaint sufficiently alleges as much. *See* Compl. ¶ 222. Accordingly, this Court should not dismiss Plaintiff's state law claim for intentional infliction of emotional distress against Defendant Hart.

### VII. Plaintiff's claims under the West Virginia Human Rights Act.

In view of this Court's decision in *Klug v. Marshall Univ. Joan C. Edwards Sch. of Med.*, No. CV 3:18-0711, 2019 WL 1386403 (S.D.W. Va. Mar. 27, 2019), Plaintiff voluntarily dismisses his West Virginia Human Rights Act ("WVHRA") claim against Marshall University Board of Governors. Nonetheless, Plaintiff has sufficiently stated a claim against Defendant Hart for *aiding and abetting* violation of the WVHRA.

Sovereign immunity holds that Marshall, as an arm of the state, cannot be sued for discrimination under the WVHRA—not that the discrimination did not occur. Plaintiff plausibly pleads that Marshall *did* engage in discrimination, and that Hart aided and abetted that discrimination, regardless of whether her co-defendant can be held liable. That claim against, Hart, therefore, must stand.

Hart argues that in order to be liable for "aiding and abetting an unlawful discriminatory practice, [she] must have known an action was discriminatory and given 'substantial assistance or encouragement' to the employer to accomplish that discrimination." ECF No. 10, at 10 (quoting *Larry v. Marion County Coal Company*, 2018 WL 648371, at *11). She goes on to state

17

that "Plaintiff has not alleged any discriminatory practice. Specifically, the Plaintiff has not alleged any facts that show discrimination on the basis of sex." *Id.* However, as thoroughly described here in, Plaintiff has alleged sufficient facts that, when taken as true, allow the Court to draw the reasonable inference that Hart intentionally discriminated against Plaintiff on this basis of sex and that she provided substantial assistance to Marshall to accomplish that discrimination. As such, the state law aiding and abetting claim against Hart should not be dismissed at this stage.

## CONCLUSION

In light of the foregoing, this Court should find that the well-pleaded facts of Plaintiff's Complaint are sufficient to state the claims asserted against the Defendants. Accordingly, Plaintiff John Doe respectfully requests that the Court deny Defendant Marshall University Board of Governors and Defendant Debra Hart's motions to dismiss (ECF Nos. 9 & 11).

**PLAINTIFF JOHN DOE**

**By Counsel**:

/s/ Ryan McCune Donovan
Ryan McCune Donovan (WVSB #11660)
J. Zak Ritchie (WVSB #11705)
Casey E. Waldeck (WVSB #14001)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
rdonovan@hfdrlaw.com
zritchie@hfdrlaw.com
cwaldeck@hfdrlaw.com