IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOHN DOE,

        Plaintiff,

v.                                      CIVIL ACTION NO. 3:22-0346

MARSHALL UNIVERSITY
BOARD OF GOVERNORS; and
DEBRA HART, in her individual
and official capacity,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss on behalf of Defendant Debra Hart (ECF No. 9) and a Motion to Dismiss on behalf of Defendant Marshall University Board of Governors. ECF No. 11. Plaintiff John Doe filed a consolidated Response in opposition to the motions, and Defendants filed a consolidated Reply. For the following reasons, the Court **HOLDS** the motions **IN ABEYANCE** and **ORDERS** the parties to submit additional briefing on the issue of Plaintiff's standing.

**I.
BACKGROUND**

On August 19, 2022, Plaintiff filed an action against Defendants Marshall University Board of Governors and Debra Hart, in her individual and official capacity as Marshall University's Title IX Coordinator. In the lengthy Complaint, Plaintiff states that he is a twenty-year-old student at Marshall University and is enrolled in its exclusive B.S./M.D. program. *Compl.* ¶¶14, 19. This program allows students to earn "both Bachelor of Science and Doctor of

Medicine degrees on an accelerated schedule with no MCAT required and guaranteed, tuition-free acceptance to the Marshall University School of Medicine." *Id.* ¶19. Plaintiff states that his life-long goal is to become a surgeon, but Defendants' continued unlawful actions against him will extinguish any chance he has of accomplishing his dream.

Specifically, Plaintiff alleges that in 2020 a false Title IX complaint was filed against him (the "2020 complaint"). *Id.* ¶6. The complaint was voluntarily dismissed after the complainant refused to assist with the investigation. *Id.* ¶25.[1] Plaintiff asserts that Defendant Hart, however, attempted to revive the complaint and continue with the investigation until Marshall University's general counsel intervened and precluded her from proceeding with the case. *Id.* ¶7.

Plaintiff states that Defendant Hart abandoned her neutral role and, thereafter, initiated a campaign against him because she believed he "got away with" the accusations in the 2020 complaint. *Id.* ¶8 (internal quotation marks omitted). According to Plaintiff, Defendant Hart began "actively solicitat[ing] new claims against him." *Id*. The first new complaint Defendant Hart solicited was quickly dismissed because there were no allegations of "sexual misconduct covered by Title IX." *Id*. ¶9.[2]

---

[1]Plaintiff asserts that he and the complainant ("W.J.") were in a romantic relationship. A few days after the relationship ended, W.J. alleged Plaintiff engaged in sexual misconduct with her several weeks earlier while the two were dating. *Id*. ¶¶20-23.

[2]This complaint was filed by a student referred to as "S.S." and involved an accusation that Plaintiff, who is "an African-American[,] . . . 'us[ed] an offensive racial word while mimicking lyrics from a rap song.'" *Id.* ¶34. Plaintiff's counsel rightly argued that, even if true, such conduct does not violate Title IX. *Id.* ¶35.

On September 23, 2021, a second new complaint was filed by "Jane Roe," a different female student (the "2021 complaint"). *Id.* ¶¶10, 38. In that complaint, Ms. Roe alleged Plaintiff touched her in a sexual manner without her consent nearly eight months earlier, on January 29, 2021. Plaintiff asserts that Ms. Roe admitted that "she was intoxicated and high on illegal drugs at the time the alleged misconduct occurred and . . . she never would have filed the complaint if not for Hart's active solicitation and encouragement." *Id.* ¶10. The 2021 complaint remains pending against Plaintiff.

After he learned Defendant Hart had solicited Ms. Roe's complaint, Plaintiff asked that Defendant Hart be recused from the matter, but she refused to do so. *Id.* ¶¶152-53. Plaintiff contends that Defendant Hart's solicitation of women to file complaints against him amounts to retaliation and Defendant Hart "and others in Marshall's Title IX Office have continued to discriminate against him by conducting an unfair and biased investigation and depriving him of important rights guaranteed by Title IX and the United States Constitution." *Id.* ¶11. Plaintiff lists a number of ways he claims Marshall University has violated and selectively enforced its own "Title IX Grievance Procedures for Students" throughout the investigation and administrative process. *Id.* ¶¶12, 59. In particular, Plaintiff complains that the investigator assigned to the case was a librarian, who was untrained in investigations and had a "close personal and professional relationship with Ms. Hart." *Id.* ¶¶60-61. Plaintiff details how the Final Investigative Report prepared by the librarian is riddled with both procedural and substantive errors and draws erroneous and impermissible findings against him, stripping away the presumption of innocence and usurping the role of the Review Panel.

Plaintiff also asserts the librarian mishandled the cross complaint he filed for retaliation. Plaintiff claims that Ms. Roe admitted she lodged her complaint against him solely because the previous Title IX cases were dismissed and then, during the investigation, she directly contradicted her earlier statements about when she learned of the previous Title IX case. *Id*. ¶¶146-151, 154-56. Despite these significant inconsistencies, the investigator found Ms. Roe to be "entirely credible" and made other credibility findings that "demonstrated a tremendous degree of bias against" him. *Id*. ¶157 (internal quotation marks omitted). Moreover, despite Ms. Roe's "indisputable falsehoods," "the Final Investigation Report concluded that Roe was 'not responsible' for the alleged retaliation." *Id*. ¶158.

As a result of Defendants' alleged acts and omissions, Plaintiff asserts the following causes of action in the Complaint before this Court: (1) a Violation of Title IX (20 U.S.C. § 1681) Sex Discrimination (Retaliation) against Marshall University (Count I);[3] (2) a Violation of Title IX (20 U.S.C. § 1681) Sex Discrimination (Selective Enforcement) against Marshall University (Count II); (3) a Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Procedural Due Process against Defendant Debra Hart (Count III); (4) a Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Equal Protection (Count IV) against Defendant Debra Hart; (5) a Violation of the West Virginia Human Rights Act Sex Discrimination against Marshall University (Count V); (6) Aiding and Abetting a Violation of the West Virginia Human Rights Act

---

[3]Section 901(a) of Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a), in part.

against Defendant Debra Hart (Count VI); (7) Negligence against Defendant Hart (Count VII); and (8) Intentional Infliction of Emotional Distress against Defendant Hart (Count VIII).

After Defendants filed their Motions to Dismiss and Plaintiff filed his Consolidated Response, Plaintiff filed a Motion for a Temporary Restraining Order and a Preliminary Injunction to restrain Defendants from convening a Review Panel Hearing set for November 3, 2022. In his motion, Plaintiff alleged there were a number of defects and irregularities in the Title IX process that would result in irreparable harm if not redressed before a Review Panel Hearing was held. On November 2, 2022, the Court held a hearing on the motion and orally granted a temporary restraining order in favor of Plaintiff. The Court took under advisement the issue of a preliminary injunction.

Two days later, Plaintiff informed the Court that the preliminary injunction was unnecessary because the parties had reached an agreement about how to proceed. Therefore, the Court denied Plaintiff's request for a preliminary injunction as moot. The Court's informal understanding of the agreement is that a new investigator was selected to perform an entirely new investigation and prepare a new Final Investigative Report. The Court also is aware that Defendant Hart has been removed from her position as the Title IX Coordinator.

## II.
## DISCUSSION

In light of these significant changes to the posture of the case, the Court turns to Defendants' Motions to Dismiss. The first argument Defendants make is that Plaintiff lacks standing to bring this action. It is well established that standing is a threshold that must be resolved to "ensure that federal courts do not exceed their authority[.]" *Spokeo, Inc. v. Robins*, 578 U.S.

330, 338 (2016) (citation omitted). Pursuant to Article III, Section 2 of the United States Constitution, this Court's power is limited to "cases" and "controversies," "to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of the law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992) (other citation omitted)). "When standing is challenged on the pleadings, [the Court must] accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181-82 (4th Cir. 2013) (internal quotation marks omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560-61). The party invoking federal jurisdiction at the pleading stage has the burden to establish all these elements. *Spokeo, Inc.*, 578 U.S. at 338 (citation omitted).

In their motions, Defendants argue that Plaintiff has not suffered an "injury in fact" because his risk of harm is speculative and neither concrete nor imminent. Defendants point out that the first two complaints lodged against Plaintiff have been dismissed and the Review Panel has not held a hearing on the complaint filed by Jane Roe. Moreover, when a hearing is held, Defendants contend the Review Panel may correct any mistakes that were made, may decide not to take any adverse action against Plaintiff, or may dismiss the complaint in its entirety. In other

words, it simply is unknown what the Review Panel will do and standing cannot be based upon the mere possibility that the Review Panel may discipline him.

In his Consolidated Response, Plaintiff insists that Defendants' relentless, retaliatory, discriminatory, and targeted wrongful acts against him already have caused him harm. Specifically, in every Count of the Complaint, Plaintiff alleges that the respective Defendants' wrongful acts have caused him "to suffer losses of education opportunities and benefits, along with injuries, damages, and losses, including, but not limited to, lost future earnings and loss of earning capacity, damage to and delays in his pursuit of higher education, and fear, anxiety, humiliation, and emotional distress." *Compl.* ¶177 (Count I), ¶184 (Count II), ¶195 (Count III), ¶203 (Count IV), ¶210 (Count V), ¶215 (Count VI), ¶219 (Count VII), and ¶226 (Count VIII).

In considering the parties' arguments, the Court is mindful of the fact that the briefing on the Motions to Dismiss was complete before the parties agreed to have a new investigator perform a new investigation and prepare a new Final Investigative Report, with Defendant Hart no longer serving as the Title IX Coordinator. Additionally, the Court is unaware of any decision since that time terminating Plaintiff as a student in the B.S./M.D. program or causing him to withdraw from the program. Given what amounts to a redo of much of the process, it appears that some, but perhaps not all, of Plaintiff's concerns about errors along the way may be remedied and/or moot.

Nevertheless, as to each of his claims, Plaintiff claims to have "suffer[ed] losses of education opportunities and benefits, along with injuries, damages, and losses, including, but not

limited to, lost future earnings and loss of earning capacity, damage to and delays in his pursuit of higher education." *Id.* However, assuming Plaintiff has remained a student in the B.S./M.D. program, it is unclear to the Court what factual allegations in the Complaint support his claim of losses, injuries, and damages to his education and future earnings capacity that are sufficient to show he already had suffered an "injury in fact" for purposes of a standing at the time the Complaint was filed. Additionally, bare claims of emotional injuries ("fear, anxiety, humiliation, and emotional distress") may be insufficient to establish a concrete harm for purposes of establishing Article III standing. *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) ("reject[ing] the Plaintiffs' claim that 'emotional upset' and 'fear [of] identity theft and financial fraud' resulting from the data breaches are 'adverse effects' sufficient to confer Article III standing" (citation omitted); *Graves v. Foulger-Pratt Companies, LLC*, Civ. Act. No. 1:21-01367, 2023 WL 2720795, at *9 (E.D. Va. Mar. 30, 2023) (holding that in the context of the FDCPA the emotional distress claimed by the plaintiff was insufficient for Article III standing); *but cf. TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2211 n.7 (2021) ("tak[ing] no position on whether or how such an emotional or psychological harm could suffice for Article III purposes").[4]

## III.
## CONCLUSION

Accordingly, as the Court does not apply the presumption of truth to conclusory statements, the Court finds additional briefing on the issue of standing as a threshold matter is necessary. Therefore, the Court **DIRECTS** Plaintiff to file a Sur-Response **on or before April 24,**

---

[4] In his brief, Plaintiff mentions that he has suffered reputational harm. In *TransUnion*, the Supreme Court recognized that reputational harms can be considered a concrete harm for Article III standing purposes. 141 S. Ct. at 2204. However, Plaintiff does not specifically allege in his Complaint that he already has suffered reputational harm. Instead, he asserts the possibility of a future risk that "unwarranted discipline or expulsion . . . would permanently damage his reputation and end his promising professional career before it begins." *Compl.* ¶14.

**2023,** addressing the issue of standing. Defendants shall have until **on or before May 3, 2023** to file a Sur-Reply.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: April 13, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE