IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JOHN DOE,**

    **Plaintiff,**

v.                                             Case No.:  3:22-cv-00346

**MARSHALL UNIVERSITY
BOARD OF GOVERNORS, et al.,**

    **Defendants.**

### MEMORANDUM OPINION and ORDER

On May 12, 2023, the parties appeared, by counsel, for a supplemental hearing on Plaintiff's Motion to Compel and request for Attorneys' fees related to the motion, (ECF No. 49), and hearing on Plaintiff's Motion to Continue the Fee Affidavit Deadline, (ECF No. 72). After considering the arguments of counsel and relevant legal principles, the Court orders as follows:

1. Plaintiff's Motion to Compel, (ECF No. 49), is **GRANTED**, in part, and Defendants are **ORDERED** to produce to Plaintiff on or before **May 31, 2023** any documents which are responsive to Request for Production of Documents Numbers 35, 36, 37, 38, 52, and 53. The Court limits the scope of the requests to documents that were generated or received by anyone in the Title IX office and/or their superiors in the Title IX chain of command.[1] Defendants may assert any valid

---

[1] The Court's prior order, (ECF No. 57), resolved all discovery requests identified in the Motion to Compel, (ECF No. 49), except for Request Nos. 35, 36, and 37. However, the parties agreed during the May 12, 2023 hearing to limit Request Nos. 38, 52, and 53 in the same manner because they were substantially similar requests.

1

claims of attorney-client privilege, work product, and/or Family Educational Rights and Privacy Act (FERPA) protection, but they must document any responsive information that is redacted or withheld in a privilege log that complies with the Federal Rules of Civil Procedure.

2. Plaintiff's request for attorneys' fees and expenses under Fed. R. Civ. P. 37(a) related to the Motion to Compel, (ECF No. 49), and his Motion to Continue the Fee Affidavit Deadline, (ECF No. 72), are **DENIED**.

3. The parties are **ORDERED** to appear for a mediation on the unresolved discovery issues with law clerk Jenna Hess on **Tuesday, May 23, 2023 at 1:00 p.m.**, in Courtroom 102, Sidney L. Christie Federal Building and Courthouse, 845 Fifth Avenue, Huntington, West Virginia. On or before **Friday, May 19, 2023**, Plaintiff shall e-mail to Jenna Hess and opposing counsel an outline of the unresolved discovery issues, and the parties should be prepared to identify during the mediation the specific individuals who worked in the Title IX office and their superiors in the Title IX chain of command during the time frame of the facts alleged in Plaintiff's Complaint.

I. **Relevant Facts**

*A. Complaint*

Plaintiff John Doe is a student in the Bachelor of Science and Doctor of Medicine (B.S./M.D.) program at Marshall University ("Marshall"). (ECF No. 1 at 4, 5). In 2020, W.J. accused Plaintiff of sexual misconduct, and the complaint was investigated by Marshall's Title IX Coordinator, Debra Hart ("Hart"). (*Id.* at 5-6). Although W.J. voluntarily dismissed her complaint in 2020, Hart imposed a no-contact order against Plaintiff and allegedly encouraged W.J. to revive her claims. (*Id.* at 6). When school

resumed in September 2021, Hart asked other female members of the B.S./M.D. program if they had any complaints against Plaintiff. (*Id.* at 6-7). S.S. alleged that Plaintiff, who is African American, used a racial slur when lip synching a rap song, but that complaint was also dismissed. (*Id.* at 7).

In September 2021, Jane Roe submitted a Title IX complaint that Plaintiff sexually assaulted her nine months earlier in January 2021. (*Id.* at 7-9). Jane Roe admitted that she filed the complaint after becoming aware of Plaintiff's previous involvement in the 2020 sexual assault complaint. (*Id.* at 7). Marshall appointed Dr. Monica Brooks, the Dean of Libraries, to investigate Jane Roe's complaint. (*Id.* at 10). According to Plaintiff, Dr. Brooks violated Marshall's Title IX policy in investigating Jane Roe's allegations and preparing the final report. (*Id.* at 10-21). Plaintiff filed a cross complaint against Jane Roe for retaliation. (*Id.* at 23).

The Review Panel Hearing on Jane Roe and Plaintiff's complaints was scheduled for August 22, 2022. (*Id.* at 25). However, on August 19, 2022, Plaintiff filed the instant action against Marshall and Hart in her individual and official capacity. Plaintiff alleges that Marshall retaliated against him based on his sex in violation of Title IX, selectively enforced Title IX against him based on his sex, and discriminated against him based on his sex in violation of the West Virginia Human Rights Act. (*Id.* at 26-30, 33-34). Plaintiff further asserts that Hart violated his procedural due process and equal protection rights in violation of 42 U.S.C. § 1983, aided and abetted sex discrimination against him in violation of the West Virginia Human Rights Act, and acted with negligence and intentional infliction of emotional distress. (*Id.* at 30-33, 34-37).

### B. *Temporary Injunction*

The Review Panel hearing on Jane Roe's sexual misconduct complaint against

3

Plaintiff and Plaintiff's cross complaint for retaliation against Jane Roe was continued until November 3, 2022. (ECF No. 65 at 6). On October 26, 2022, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction to restrain the Review Panel hearing from proceeding until this civil action is resolved. (ECF Nos. 19, 20). On November 2, 2022, the presiding district judge held a hearing on the motion, orally granting a temporary restraining order and taking the motion for preliminary injunction under advisement. (ECF No. 32). Plaintiff later moved to withdraw the Motion for Preliminary Injunction, (ECF No. 35), and the presiding district judge denied the motion as moot and without prejudice, (ECF No. 36). As of April 13, 2023, the parties agreed that Marshall would appoint a new investigator in Plaintiff and Jane Roe's Title IX cases.

### C. Motion to Compel

On February 13, 2023, Plaintiff filed a Motion to Compel concerning Defendants' responses to Plaintiff's First Set of Requests for Production of Documents, seeking attorneys' fees and expenses incurred in making the motion. (ECF No. 49). After briefing was completed, the undersigned held a motion hearing during which the parties presented their arguments on the relevant issues. (ECF No. 56). By Order dated March 31, 2023, the undersigned granted, in part, and denied, in part, the motion, which resolved all of the disputed requests except for Request Numbers 35, 36, and 37. (ECF No. 57).[2] The undersigned ordered additional briefing on Request Numbers 35, 36, and 37 to determine the relevance of the materials sought. (*Id.* at 2). Plaintiff filed a brief to which Defendants filed a response and Plaintiff filed a reply. (ECF Nos. 65, 68, 74). As relevant

---

[2] The undersigned also ordered additional briefing concerning Request Nos. 7 through 12, if the parties were unable to resolve the dispute concerning the scope of the requests and relevance of the information sought. (ECF No. 57 at 3). Plaintiff notified the Court that the parties reached an agreement on these issues. (ECF No. 65 at 16). Therefore, those requests are not addressed in this Memorandum Opinion and Order.

4

to this Memorandum Opinion and Order, the requests and responses are as follows:

> **Request No. 35:** Provide a copy of any Marshall University communications or documents relating to the USA Today article "How a top university failed survivors during their Title IX cases" (Nov. 16, 2022).
>
> **Request No. 36:** Provide a copy of any Marshall University communications or documents relating to the USA Today's article "Marshall seeks new Title IX coordinator after USA Today investigation." (Nov. 18, 2022).
>
> **Request No. 37:** Provide a copy of any Marshall University communications or documents relating to Herald Dispatch articles on Marshall University's Title IX Office in November and December 2022, including "Marshall students protest Title IX issues on campus" (Nov. 18, 2022); "Group gathers on campus to address Title IX response at Marshall" (Nov. 19, 2022); "Attorney says Title IX frustrations at Marshall continue" (Nov. 22, 2022); "Do you agree with Marshall University President Brad D. Smith's restructuring of the Title IX Office?" (Nov. 23, 2022); and "Marshall board updated on Title IX issues, expands alcohol sales" (Dec. 15, 2022).

(ECF No. 49-1 at 6).

To all three requests, Defendants initially responded:

> **RESPONSE:** Objection. The Defendant objects to this Interrogatory because it seeks information beyond the scope of permissible discovery and is not reasonably calculated to lead to the discovery of admissible evidence. The Defendant further objects to this Request because it is overly broad and unduly burdensome. The information requested does not provide any relevant information related to the Plaintiff's allegations.

(ECF No. 49-3 at 13-14).

After the Order on Plaintiff's motion to compel, Defendants filed supplemental responses on April 13, 2023, stating:

> **AMENDED OBJECTION.** Objection. Defendants object to the request on the grounds that the information requested, under the current scope of the request, is "not reasonably accessible because of undue burden or cost". Fed R. Civ. P. 26(b)(2)(B). Further, the request of "any Marshall University communications or documents relating to the USA Today article 'How a top university failed survivors during their Title IX cases'" seeks documents and information that are neither relevant nor "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

5

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit". Fed R. Civ. P. 26(b)(1). Further, the request's scope of "any Marshall University communications or documents relating to the USA Today article 'How a top university failed survivors during their Title IX cases'" is overly broad and would be time and labor prohibitive to conduct a search for all documents university-wide within the scope of the request. See the attached Affidavit of Joh Cutler, Chief Information Security Officer at Marshall University; Marlow v. Chesterfield Cnty. Sch. Bd., No. 3:10CV18-DWD, 2010 WL 3660770, at *4 (E.D. Va. Sept. 15, 2010) ("Marlow also seeks copies of all emails to, or from, any CCSB board member or employee related to nine (9) categories. Because the school board has 8,000 employees, most of whom have no information relevant to the claims at issue, the request is also overly broad and places an undue burden on CCSB for compliance.").

Further, to the extent that the request is construed to include e-mails and documents from or concerning students at the University, this would implicate the provisions of the Family Educational Rights and Privacy Act ("FERPA"). 20 U.S.C.A. § 1232g(b)(2)(B). FERPA provides that "[n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information," which includes parent name and contact information. 20 U.S.C. § 1232g(b)(2); 34 C.F.R. § 99.3 (defining "personally identifiable information"). Marlow v. Chesterfield Cnty. Sch. Bd., No. 3:10 CV18 DWD, 2010 WL 3660770, at *4 (E.D. Va. Sept. 15, 2010) ("Of even more concern, however, is the possible disclosure of email correspondence that Newsome may have exchanged with such unrelated parties as parents and others dealing with irrelevant, but personal student records and disciplinary matters. Some of the communications may, in fact, be protected by the Federal Educational Rights and Privacy Act of 1974 ("FERPA")"); *see also* Wilshire v. Love, No. 3:14-CV-08374, 2015 WL 1482251, at *5 (S.D.W. Va. Mar. 31, 2015). ("Through FERPA, Congress explicitly recognized a student's privacy right in the information contained in his or her education records and clearly intended for those records to be treated with special care. United States v. Miami University, 91 F.Supp.2d 1132, 1159 (S.D. Ohio 2000). While that privacy right may not necessarily translate into a heavier burden on a civil litigant to establish a special need for education records before they can be discovered, the privacy right certainly is an important factor to consider in assessing good cause under Rule 26(c) and in conducting a proportionality analysis under Rule 26(b)(2)(C).")

Prior allegations by others or investigations made by Marshall University concerning other individuals are not relevant to the claims in the instant case. The only purpose for this information would be impermissible evidence of arguable specific "prior acts", which is not admissible evidence

6

> under Federal Rules of Evidence. Fed R. Evid. 404; 405. Further, the university's reaction to a news article has no relevance on the issues in this matter. The tenuous nature of this evidence is further outweighed by the FERPA issues involved and the broad scope of the request at issue. As such, pursuant to Fed. R. Civ. P. 26(b)(1), the analysis of factors does not favor disclosure of this information.
>
> Further, to the extent that the Court would Order any production of documents covered by FERPA, Defendant Marshall would need to provide prior notification of the intended disclosure to the third parties involved. 20 U.S.C.A. § 1232g(b)(2)(B).
>
> Further, the scope of this request includes documents, communications, and information that would be covered by the attorney client privilege and work product doctrine.

(ECF No. 65-11 at 24-29).

On May 12, 2023, the undersigned held a supplemental hearing on the various discovery issues. (ECF No. 81).

## II. Discussion

### A. Motion to Compel

Rule 26(b)(1) of the Federal Rules of Civil Procedure outlines the scope of discovery:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Yet, even if

7

seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). Under the local rules of this Court, a motion to compel must be filed within 30 days of the discovery responses being due, or the motion is waived. L. R. Civ. P. 37.1(c). However, the 30-day deadline may be extended by Court order for good cause shown or by stipulation of the parties, so long as the extension does not interfere with the scheduling order. *Id.*

In the event of a discovery dispute, the party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

In this case, three requests for production remain at issue in Plaintiff's motion to compel, which concern new articles that were published after Plaintiff filed his complaint, but he alleges are relevant to his claims in this action. The requests are discussed individually below:

### 1. Request No. 35

Plaintiff asks Defendants to "[p]rovide a copy of any Marshall University communications or documents relating to the USA Today article 'How a top university failed survivors during their Title IX cases' (Nov. 16, 2022)." (ECF No. 49-1 at 6). The reporter alleges in the article that Marshall failed to properly respond to sexual assault

8

allegations against a former student, Chase Hardin ("Hardin"), in 2016 and 2018. (ECF No. 65-1). Hardin was found not responsible for the 2016 assault and permitted to remain on campus. (*Id.* at 5, 13). In June 2019, Marshall recommended suspending Hardin due to the 2018 assault, but it changed course and expelled him five days later after he was indicted for four counts of sexual assault involving two victims. (*Id.* at 10-11). The journalist states that Marshall improved its Title IX process following the Hardin assaults. (*Id.* at 11). However, Marshall continued to hold few individuals accountable in Title IX investigations, and victims remained critical of Marshall's handling of Title IX cases. (*Id.*). Defendant Hart is specifically criticized in the article as being "a problem." (*Id.* at 8). The impression among the students, faculty, and staff is reportedly that Hart "blows everything off" and "will never find anything negative against the university." (*Id.* at 8). The article provides data from January 2018 through December 2020 regarding the low percentage of individuals that were deemed responsible in Marshall's Title IX investigations, and it indicates that eight of the 10 Marshall students found responsible in that timeframe avoided suspension or expulsion. (*Id.*).

It is Plaintiff's theory that Marshall and Hart zealously targeted him under Title IX due to the public backlash over their mishandling of the Chase Hardin case and other allegations. (ECF No. 65 at 9). Therefore, he argues that statements from Marshall's agents concerning the foregoing article, such as indicating that the Title IX office is flawed, that Hart incompetently ran the office, or that Marshall and Hart need to be harsher on male students are directly relevant to his claims in this action. (ECF No. 74 at 2).

Defendants, by contrast, argue that the only relevant inquiry in this matter is the Title IX investigation of Plaintiff, not any past patterns of conduct by Marshall's Title IX

9

office. (ECF No. 68 at 2). Further, Defendants argue that, to any extent that past actions are relevant to Plaintiff's claims, the articles were published after this lawsuit was filed, and internal communications generated by Marshall are protected from disclosure as work product or attorney client privileged communications. (*Id.* at 10-13). Finally, Defendants argue that the request is overly broad, not proportional to the needs of the case, and solicits information that cannot be disclosed under FERPA. (*Id.* at 15-19). In response to Defendants' belated FERPA objection, Plaintiff voluntarily agrees to limit the scope of this discovery request to exclude all student communications. (ECF Nos. 65 at 15, 74 at 3).

Defendants attached to their response in opposition a Supplemental Affidavit of Jon Cutler, Marshall's Chief Information Security Officer. (ECF No. 68-2). Mr. Cutler explains that Marshall has "1,800+ full time employees," a number which grows to well over 3,500 when you include any Marshall employee, agent, or affiliate, such as Marshall School of Medicine and Marshall Health employees. (*Id.* at 3). The search expands to 8,000 when non-employees are included in the search, and student users exceed 12,000. (*Id.*). According to Mr. Cutler, responding to the disputed discovery requests would require the development of custom e-mail distribution groups and extensive searches, review, and redaction. (*Id.* at 4-5). However, the only "test search" that he performed concerned Request for Production Number 52. (*Id.* at 4).

The article concerns the time frame of 2016 through November 2022. Plaintiff alleges in this action that he was unlawfully discriminated and retaliated against in Marshall's Title IX investigations and by Debra Hart, in particular, beginning in 2020. (ECF No. 1). Although he was found not responsible for the 2020 allegations, another complaint was made against him in November 2021 by Jane Roe, and that Title IX

investigation is still not resolved. Plaintiff filed the instant action in August 2022, roughly three months before the article at issue in Request Number 35 was published. Given those time frames, Marshall's documents concerning the article have limited applicability to the current proceeding because any concerns expressed or remedial measures regarding Marshall's Title IX office moving forward is really not the subject of this case.

The undersigned finds that there is a possibility that the information sought may be relevant to Plaintiff's claims, which is the broad definition of relevancy that applies to discovery requests. The substance of the article is that Marshall and Hart swept Title IX allegations "under the rug" to protect the university's reputation from 2016 through at least December 2020. Plaintiff contends in this action that he was unlawfully targeted and retaliated against under Title IX, and by Hart in particular beginning in 2020. He believes that the treatment that he received in the Title IX process was influenced by the bad press that Marshall received concerning the Hardin case and other factors. Therefore, by way of example, a Marshall agent commenting upon the November 2022 article may have discussed the flaws in the Title IX process at the time that Plaintiff was investigated and/or changes that were made to "crack down" on Title IX offenders. It is certainly within the realm of possibility.

However, the undersigned agrees that the scope of the request is overly broad, as worded. As Defendants noted, the request could encompass a comment by a Marshall music or economics professor concerning the article. (ECF No. 68 at 14). The undersigned fails to appreciate the relevance of such information to Plaintiff's claims.

### 2. Request No. 36

Plaintiff further seeks "a copy of any Marshall University communications or documents relating to the USA Today's article 'Marshall seeks new Title IX coordinator

11

after USA Today investigation.' (Nov. 18, 2022)." (ECF No. 49-1 at 6). This article builds upon the article that is the subject of Request Number 35. It discusses that Marshall announced that it was searching for a new Title IX coordinator one day after the foregoing article was published, and that students protested on campus demanding that Marshall handled Title IX complaints. (ECF No. 65-3 at 1-3). Marshall President Brad Smith is quoted as stating that the university worked on restructuring the Title IX office over the past several months, which included placing accountability for Title IX to the General Counsel's office and naming a new Title IX coordinator to replace Hart. (*Id.* at 1). The details of the Hardin case are again mentioned in the article, noting that Hardin remained on campus after the first Title IX sexual assault allegation against him in 2016, and he was not expelled until three years later after being accused by two more students of rape, arrested twice, and on probation for battery. (*Id.*).

Like the previous article, this article was not published until November 2022, and it has limited probative value to Plaintiff's claims. However, to the extent that Marshall generated any documents concerning issues with the Title IX office or Hart during the time frame of Plaintiff's Title IX investigation because of such article, that information could be relevant.

### 3. Request No. 37

Finally, Plaintiff requests copies of Marshall communications or documents relating to five Herald Dispatch articles that were published regarding Marshall's Title IX Office in November and December 2022. (ECF No. 49-1 at 6). These articles concern a student protest on campus on November 18, 2022 regarding the Title IX office, (ECF No. 65-4, 65-5); continued frustrations expressed concerning Marshall's Title IX office, including discussing Plaintiff's pending case, (ECF No. 65-6); an online poll asking if

commenters agree with President Brad Smith restructuring the Title IX office, (ECF No. 65-7); and changes that were planned to be implemented to the Title IX office by spring 2023, (ECF No. 65-8). Again, although these articles were published after Plaintiff filed his complaint, his Title IX investigation is ongoing, and there might be Marshall communications discussing Title IX issues that Plaintiff alleges.

Considering relevancy and proportionality concerns, the Court **GRANTS** Plaintiff's Motion to Compel, (ECF No. 49), concerning Request Numbers 35, 36, 37, 38, 52, and 53[3] as limited to documents generated or received by Marshall employees and agents within the Title IX office and those employees or agents' superiors in the Title IX chain of command. Defendants are **ORDERED** to produce responsive documents to Plaintiff on or before **May 31, 2023**. They may assert any valid claims of attorney-client privilege, work product, and/or FERPA protection, but they must produce a privilege log that complies with the Federal Rules of Civil Procedure regarding any responsive information that is redacted or withheld.

### B. *Request for Attorneys' Fees*

As discussed, in February 2023, Plaintiff filed a Motion to Compel concerning his First Set of Requests for Production of Documents, seeking his reasonable expenses associated with making the motion. (ECF No. 49 at 11) (citing Fed. R. Civ. P. 37(a)(5)(A)). Plaintiff stated that, if the Court determined that he may recover his reasonable expenses, he "stood ready to submit a fee application in accordance with the Court's direction." (ECF No. 49 at 11). The undersigned held a hearing on the Motion to Compel during which Plaintiff discussed his request for attorneys' fees. Plaintiff was advised that the law of this

---

[3] As noted, the parties agreed to limit the scope of Request Nos. 38, 52, and 53 in the same manner as 35, 36, and 37.

district requires a party to meet and confer <u>in person</u> or via the <u>telephone</u> before filing a motion to compel a discovery response in order to recover the reasonable attorneys' fees for making the motion. It appeared that Plaintiff did not comply with that requirement. Nonetheless, the undersigned allowed Plaintiff the opportunity to submit an affidavit of his reasonable fees and expenses incurred in making the motion. (ECF No. 57 at 4). The undersigned plainly specified that his failure to timely file the affidavit and supporting documentation on or before April 28, 2023 "shall result in denial of fees and costs." (*Id.*).

Despite that directive, Plaintiff waited until the April 28, 2023 deadline to file the instant request for an extension of time to file the fee affidavit. (ECF No. 72). Plaintiff's reasoning is that Defendants have not fully complied with the Court's Order on Plaintiff's Motion to Compel, and the dispute is ongoing. (ECF No. 72 at 4). Plaintiff suggests that "in order to conserve judicial resources, resolution of fees and costs should be reserved until the time the Defendants have fully complied with the Court's order and the issues raised in his motion to compel have been resolved." (*Id.*).

Plaintiff's argument in favor of an extension is unavailing because it conflates two separate rules provided in the Federal Rules of Civil Procedure that can be a basis for awarding attorneys' fees. Under Rule 37(a)(5)(C) of the Federal Rules of Civil Procedure, when a discovery motion is partially granted, the Court can apportion to the parties the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). By contrast, Rule 37(b)(2)(C), concerns discovery sanctions moving forward. Under Rule 37(b)(2)(C), the Court can order a party or its counsel to pay the reasonable attorneys' fees and expenses incurred as a result of a party's failure to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(C). Importantly, attorneys' fees related to making a motion to compel and attorneys' fees related to a party's failure to comply with a discovery order are distinct

14

issues. The fee affidavit that Plaintiff was ordered to submit by April 28, 2023 concerned Plaintiff's reasonable fees and expenses incurred in making the motion to compel. Plaintiff has not moved for fees and expenses related to Defendants' alleged violation of the Court's discovery order. Therefore, it is unclear how Defendants' supposed continued abuse of the discovery process warrants an extension of the deadline to file a fee affidavit concerning the motion to compel.

Furthermore, Plaintiff did not confer in good faith with Defendants in an effort to obtain the requested discovery before filing a motion to compel, as required by the Federal and Local Rules of Civil Procedure. This factor additionally argues against extending the deadline for Plaintiff to file the fee affidavit and awarding fees to Plaintiff. Rule 37(a)(1) of the Federal Rules of Civil Procedure requires a party to confer or attempt to confer with the disobedient party in an effort to obtain discovery without court action before filing a motion to compel. Fed. R. Civ. P. 37(a)(1). The party must make a good faith effort to confer in person or by telephone with the opposing party to attempt to narrow the areas of disagreement before seeking court intervention. L. R. Civ. P. 37.1(b) ("Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each party shall make a good faith effort to confer in person or by telephone to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the meeting."). In this district, electronic or written communications such as emails do not, on their own, qualify as conferring on discovery issues. *See, e.g., Murphy v. Setzer's World of Camping, Inc.*, No. 3:20-CV-00406, 2021 WL 4899165, at *3 (S.D.W. Va. Oct. 20, 2021).

Finally, even assuming that Plaintiff's fees and expenses related to the motion to compel were ongoing, as he suggests, he offers no explanation as to why he did not ask

15

opposing counsel for an extension or submit an affidavit of his reasonable fees and expenses to that point with the caveat that fees and expenses continued to accrue. The Federal and Local Rules, as well as this Court's Order, were unambiguous regarding what was required of Plaintiff in order to request attorneys' fees related to the motion to compel. Plaintiff fails to assert any justifiable reason for extending the deadline to file the fee affidavit or to award fees and expenses in this case. Therefore, the Court **DENIES** Plaintiff's request for attorney fees and expenses incurred in making his Motion to Compel, (ECF No. 49), and the Motion to Continue the Fee Affidavit Deadline, (ECF No. 72).

The Court further **ORDERS** that the parties appear for a mediation on the unresolved discovery issues with law clerk Jenna Hess on **Tuesday, May 23, 2023 at 1:00 p.m.**, Courtroom 102, Sidney L. Christie Federal Building and Courthouse, 845 Fifth Avenue, Huntington, West Virginia. On or before **Friday, May 19, 2023**, Plaintiff shall e-mail to Jenna Hess and opposing counsel an outline of the unresolved discovery issues, and the parties should be prepared to identify during the mediation the specific individuals who worked in the Title IX office and their superiors in the chain of command during the time of the facts alleged in Plaintiff's Complaint.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** May 12, 2023

Cheryl A. Eifert
United States Magistrate Judge