IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JOHN DOE,

                Plaintiff,

v.                                CIVIL ACTION NO.  3:22-0346

MARSHALL UNIVERSITY
BOARD OF GOVERNORS; and
DEBRA HART, in her individual
and official capacity,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss on behalf of Debra Hart (ECF No. 9), a Motion to Dismiss on behalf of Marshall University Board of Governors (ECF No. 11), and Plaintiff's Motion for Leave to File Amended and Supplemental Complaint. ECF No. 69. Upon consideration of the motions and for the following reasons, the Court **GRANTS** Plaintiff's motion to file his Amended and Supplemental Complaint. However, the Court agrees with Defendants Hart and Marshall University that Plaintiff has failed to state a plausible procedural due process claim in Count III of his Amended and Supplemental Complaint. Therefore, the Court finds he cannot proceed on that claim. Additionally, as the Motions to Dismiss were filed as to the original Complaint, the Court **DENIES** Defendants' motions **AS MOOT**.

**I.**
**PROCEDURAL AND RELEVANT**
**FACTUAL BACKGROUND**

This Court recently set forth the factual background of this action in its Memorandum Opinion and Order entered on April 13, 2023, and the Court incorporates that

background in full by reference here. *Doe v. Marshall Univ. Bd. of Governors*, No. 3:22-cv-00346, 2023 WL 2938963 (Apr. 13, 2023). To recap for purposes of the current motions, Plaintiff filed this action on August 19, 2022, against Defendants Marshall University Board of Governors and Debra Hart, in her individual and official capacity as Marshall University's Title IX Coordinator. *Id.* at *1. In his original Complaint, Plaintiff stated a number of causes of action related to alleged defects and irregularities in the Title IX investigations and actions launched against him by Defendant Hart and Marshall's Title IX Office. Plaintiff complained that the investigations were completely mishandled, and he ultimately filed a Motion for a Temporary Restraining Order and Preliminary Injunction to restrain Defendants from convening a Review Panel Hearing scheduled to occur on November 3, 2022.[1]

On November 2, 2022, this Court held a hearing on the motion. At the conclusion of the hearing, the Court orally granted a temporary restraining order in favor of Plaintiff and took the issue of a preliminary injunction under advisement. Just two days later, the Court was informed that a preliminary injunction was unnecessary because the parties had reached an agreement about how to proceed. As stated in the Court's April 13, 2023 Memorandum Opinion and Order, "[t]he Court's informal understanding of the agreement is that a new investigator was selected to perform an entirely new investigation and prepare a new Final Investigative Report.

---

[1] The Review Panel "review[s] the Investigator's recommended finding(s) and, if applicable, determine[s] any appropriate sanction(s) under these Procedures." Marshall University Student Conduct Procedures, App. B, Section 1, Title IX Grievance Procedures for Students, IX. University Resolution, A. Formal Resolution, 2. Review Panel Hearing, at 22, ECF No. 19-2, at 60.

The Court also [was] aware that Defendant Hart [had] been removed from her position as the Title IX Coordinator." *Id*. at *2.

The Court then turned to the motions to dismiss. [2] Given the changed circumstances, the Court found it first must address whether Plaintiff had standing under Article III, Section 2 of the United States Constitution. Therefore, in its April 13, 2023 Memorandum Opinion and Order, the Court directed the parties to submit additional briefing on whether Plaintiff adequately alleged an "injury in fact," given that the Review Panel did not hold a hearing, the parties agreed to a new investigation, and Defendant Hart was no longer the Title IX Coordinator. *Id*. at *3-4. Although Plaintiff maintains that his original Complaint sufficiently alleges an "injury in fact," he now seeks leave to file an Amended and Supplemental Complaint to allege his injuries more fully, including new alleged injuries he has suffered since the original Complaint was filed. In response, Defendants maintain the Court should deny the Amended and Supplemental Complaint as futile.

## II.
## STANDARD OF REVIEW

Plaintiff moves to Amend and Supplement his Complaint under Rule 15(a)(2) and 15(d) of the Federal Rules of Civil Procedure. Rule 15(a)(2) permits amendment of a complaint "with the opposing party's written consent or the court's leave" and provides that district courts should grant leave "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(d) further provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that

---

[2]These motions were filed prior to the November 2, 2022 hearing.

happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d), in part. Supplementation is permitted under Rule 15(d) even if "the original pleading is defective in stating a claim or defense." *Id.* As the Fourth Circuit explained in *Franks v. Ross*, 313 F.3d 184 (4th Cir. 2002), "the filing of a supplemental pleading is an appropriate mechanism for curing numerous possible defects in a complaint." 313 F.3d at 198 (citations omitted). When filed, a court reviews a Rule 15(d) motion under the same standard as Rule 15(a), that is, leave should be freely granted in the interests of justice absent a valid reason to deny leave, such as unfair prejudice, undue delay, bad faith, or futility. *Durstein v. Alexander*, No. 3:19-cv-0029, 2020 WL 4741094, at *2 (S.D. W. Va. Aug. 14, 2020) (citation omitted).

In addition to his supplemental allegations, Plaintiff also proposes amendments to his original allegations. As a Scheduling Order already has been entered, Rule 16(b)(4) of the Federal Rules of Civil Procedure applies to the proposed amendments. Under this rule, "a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment." *Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012) (citations omitted).[3] Rule 16(b)(4)'s "good-cause hurdle" "dampens Rule 15(a)(2)'s mandate to 'freely give leave [to amend] when justice so requires.'" *Moore v. Equitrans, L.P.*, 818 F. App'x 212, 218 (4th Cir. 2020) (citation omitted). "[T]he touchstone of that good cause requirement is diligence" in the plaintiff's efforts to comply with the Scheduling Order. *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020) (internal quotation marks and citations omitted). Nevertheless, even when a plaintiff exercises diligence, the district court still may deny an amendment for any valid reason under Rule 15(a).

---

[3]Rule 16(d)(4) provides in full: "***Modifying a Schedule.*** A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(d)(4).

In this case, the Court finds that Plaintiff has acted diligently in prosecuting this action and he has not delayed filing his proposed Amended and Supplemental Complaint for any nefarious reason. Additionally, the Court finds Defendants will not experience any undue hardship or unfair prejudice as a result of the revisions, particularly as the Court just recently entered an Amended Scheduling Order extending the remaining deadlines upon the parties' consent motion. Moreover, the Court concludes Plaintiff has demonstrated good cause for revising his Complaint and he easily clears the Rule 16(b)(4) hurdle. Defendants argue, however, that the proposed Amended and Supplemental Complaint nevertheless should be denied under Rule 15(a) for futility.

In evaluating futility, the Court must assess whether the proposed Amended and Supplemental Complaint can withstand a challenge under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *In re Triangle Capital Corp. Sec. Litig*., 988 F.3d 743, 750 (4th Cir. 2021) (stating "we have made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny" (citation omitted)). Under Rule 12(b)(6), courts must look for plausibility in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief,

this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While

legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Taking all these factors into consideration, the Court turns to the allegations in this case.

### III.
### DISCUSSION

### A.
### Standing

As this Court raised concern about Plaintiff's standing under Article III in its earlier Memorandum Opinion and Order and directed additional briefing on the issue, many of Plaintiff's proposed revisions are aimed at demonstrating that he has experienced an "injury in fact" to establish that he has standing. For instance, Plaintiff contends Defendants' attempts to push him out of the University left him overwhelmed and caused his grades to plummet during the fall semester. *Amended and Suppl. Compl.* ¶178. Plaintiff alleges that his "classmates are aware of the false allegations" against him, and Defendants' discriminatory and retaliatory actions caused him fear, humiliation, and reputation harm. *Id.* ¶¶167-68. Plaintiff further claims his fears caused him "to move away from campus and to withdraw from campus life, hindering his social, educational, and career development." *Id.* ¶172.

Plaintiff also alleges that his "ability to participate in his educational program" has been adversely impacted by Defendants' imposition of an onerous no-contact order with Jane Roe. *Id.* ¶¶170, 186. The no-contact order made it difficult for him to schedule classes for the 2023 Spring semester and resulted in him being unable to attend a required class in person. *Id.* ¶¶186, 187. Plaintiff maintains that "[d]espite the fact that the no-contact order is mutual—

meaning it applies to both Plaintiff and Jane Roe—Jane Roe was not prohibited from attending important classes in-person" like he was. *Id*. ¶188.

As more evidence of his injuries, Plaintiff asserts he was informed in writing that the no-contact order was lifted between himself and W.J., another female Marshall student who had made a complaint against him. *Id.* ¶193.[4] However, Defendant Hart failed to formally lift it. *Id.* ¶194. As a result, W.J. screamed at him during an encounter at Marshall's Student Center and, in March of this year, the Title IX Office accused him of violating the no-contact order with W.J. *Id.* ¶¶192, 195. To absolve himself, "Plaintiff's counsel had to send Marshall's third-party Title IX Investigator documentation showing that the W.J. no-contact order was lifted." *Id.* ¶193. Nevertheless, "[t]his incident served as a breaking point for Plaintiff." *Id.* ¶196. Given this incident and the other actions taken by Defendants over the past two years, Plaintiff suffered from so much anxiety and distress that he was "forced to medically withdraw from school and seek inpatient psychiatric treatment for his mental and emotional health." *Id.* ¶197.

In April 2023, Plaintiff and Jane Roe reached a voluntary agreement to dismiss their respective claims against each other. *Id*. ¶199.[5] Plaintiff asserts he "was effectively forced into the agreement with Jane Roe in order to avoid the worst possible result of Marshall's

---

[4]Plaintiff asserts he was told the no contact order with W.J. was lifted in February of 2021. *Id.* ¶¶25, 192. W.J.'s complaint was voluntarily dismissed when she refused to assist in the investigation. *Id*. ¶26.

[5]Plaintiff claims that, during the investigation, he learned that Jane Roe admitted to having no intention of filing a complaint against him until she had learned that a previous Title IX complaint filed against him was dismissed. *Id*. ¶¶147, 150-52. In light of this information, Plaintiff filed a cross-complaint against Jane Roe for retaliation. *Id*. ¶148.

discrimination." *Id.* ¶204. As part of the agreement, Plaintiff "agree[d] to modify his educational program and defer one year in the BS/MD program, so that the two students would not remain in the same class." *Id.* ¶200. Under the agreement, there are "strict limitations on when Plaintiff can use certain Marshall facilities." *Id.* ¶201. Additionally, the no-contact order with Jane Roe remained in place, with noncompliance possibly resulting in new student conduct violations. *Id.* ¶202.

In their motion, Defendants argue that, even in light of the proposed Amended and Supplemental Complaint, Plaintiff still fails to sufficiently allege he has suffered a concrete harm for purposes of Article III standing because he voluntarily resolved the Title IX claims with Jane Roe with no finding of responsibility or punishment to either student. However, this argument completely ignores a large swath of Plaintiff's allegations. As the United States Supreme Court has held, standing under Article III is satisfied when a plaintiff shows "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Moreover, "[w]hen standing is challenged on the pleadings, [the Court must] accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Southern Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181-82 (4th Cir. 2013) (internal quotation marks and citation omitted).

Clearly, the allegations outlined above set forth significant injuries Plaintiff claims he already has suffered. Even if anxiety, fear, and stress by themselves sometimes are considered insufficient to allege an "injury in fact,"[6] having to medically withdraw from the University and seek inpatient psychiatric treatment due to Defendants' alleged wrongful actions undoubtedly are sufficient for standing purpose. Additionally, the Court finds Plaintiff's allegations that the no-contact order with Jane Roe was so onerous and one-sided that it made it difficult for him to schedule his classes and it prevented him from taking a required class in person are plausible allegations of "injuries in fact." Moreover, Plaintiff's claims that Defendants' actions caused him to move away from campus in the fall and withdraw from college activities, which negatively impacted his social, educational, and career development opportunities, satisfies the "injury in fact" inquiry. Plaintiff also asserts he has suffered reputational harm because others in the program learned of the false allegations. *See TransUnion v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (recognizing that reputational harm as an intangible harm that can be concrete). These allegations are just some of the instances described in the Amended and Supplemental Complaint of cognizable injuries under Title IX. They are not claims of some inchoate future risk of injury. Instead, the allegations are concrete, particularized, actual, and redressable injuries that are fairly traceable to Defendants' actions. Therefore, the Court easily finds Plaintiff has standing to bring his action and rejects Defendants' arguments to the contrary. Nevertheless, Defendants assert that, even if the Court finds standing, the Court should deny Plaintiff's Motion for Leave to File Amended and Supplemental Complaint for futility.

---

[6]As this Court stated in its earlier Memorandum Opinion and Order, "bare claims of emotional injuries ('fear, anxiety, humiliation, and emotional distress') may be insufficient to establish a concrete harm for purposes of establishing Article III standing." *Doe v. Marshall Univ. Bd. of Governors*, 2023 WL 2938963, at *3 (citations omitted).

**B.**
**Futility**

In his proposed Amended and Supplemental Complaint, Plaintiff voluntarily dismissed his claim in Count V against Marshall for sex discrimination in violation of the West Virginia Human Rights Act and his claim in Count VII against Defendant Hart for negligence. However, Plaintiff maintains his Title IX claims in Counts I and II, his due process claim in Count III, his equal protection claim in Count IV, his aiding and abetting a violation of the West Virginia Human Rights Act in Count VI, and his claim for intentional infliction of emotional distress in Count VIII. Defendants argue that none of these claims can withstand a challenge under Rule 12(b)(6) and, therefore, the Court should not allow Plaintiff to amend or supplement his Complaint and should dismiss this case. To resolve the arguments presented, the Court shall address Defendants' futility arguments as to each Count.

**1.**
**Count I**
**Retaliation under Title IX**

In Count I, Plaintiff asserts Marshall University violated Title IX by retaliating against him on basis of sex. Specifically, Plaintiff alleges that Defendant Hart, acting as Marshall's Title IX Coordinator, personally solicited new Title IX complaints from female students against him because he participated in the Title IX process and successfully got other Title IX complaints dismissed. *Amended and Suppl. Compl.*, ¶¶ 214-17. According to Plaintiff, Jane Roe admitted that she would not have filed her complaint, but for Defendant Hart's solicitation and encouragement. *Id.* ¶¶151, 152, 218. Plaintiff also claims that Defendant Marshall retaliated against him by allowing Ms. Roe's complaint to move forward in response to the prior complaints being dismissed. *Id.* ¶219.

-11-

In their motion, Defendants argue Plaintiff cannot state a claim of retaliation as Marshall never disciplined him because he and Jane Roe voluntarily agreed to dismiss their respective complaints against each other. In support, Defendants rely upon the often cited case of *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994), for the proposition that a retaliation claim must focus on the final outcome of any Title IX disciplinary proceeding. However, the Court finds Defendants' reliance upon *Yusuf* with respect to this claim is misplaced.

In *Yusuf*, the Second Circuit recognized two theories of gender bias under Title IX: (1) an "erroneous outcome" theory in which a student is wrongfully found guilty of an offense and (2) a "selective enforcement" theory where the claim does not rest on a student's guilt or innocence, but rather it rests on "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." 35 F.3d at 715; *see also Doe v. Fairfax Cnty. Sch. Bd.*, 403 F. Supp. 3d 508, 515 (E.D. Va. 2019) (citations omitted) (stating courts have recognized there are "two theories that could support an Equal Protection or Title IX claim in student-discipline cases: a 'selective enforcement' theory and an 'erroneous outcome' theory" (citations omitted)). Here, Plaintiff does not argue the Review Panel reached an "erroneous outcome" based on his sex by finding him guilty of the allegations in Jane Roe's complaint or by finding Jane Roe not guilty of the allegations in his complaint,[7] as obviously both complaints were voluntarily dismissed before those decisions were made. Instead, his claim is that Marshall

---

[7]"To prevail on an erroneous outcome claim, a plaintiff must (1) assert that he 'was innocent and wrongly found to have committed an offense,' (2) establish 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding,' and (3) demonstrate 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'" *Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.*, 832 F. App'x 802, 804-05 (4th Cir. 2020) (quoting *Yusuf*, 35 F.3d at 715)).

*retaliated* against him in other ways under Title IX. Thus, the fact that the Review Panel never disciplined Plaintiff is irrelevant to this claim.

Although Title IX does not explicitly contain a cause of action for retaliation, the Supreme Court has held that "the private right of action implied by Title IX encompasses claims of retaliation." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005). In order to state a claim of retaliation under Title IX at the pleading stage, the Fourth Circuit has held that plaintiffs only must sufficiently allege (1) "that they engaged in protected activity under Title IX" and (2) "that—as a result of their protected activity—they suffered an adverse action attributable to the defendant educational institution." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018) (citations omitted).[8] To this end, Plaintiff claims Marshall retaliated against him by soliciting and convincing Jane Roe to file her complaint because he successfully obtained dismissals of the earlier complaints made against him. Additionally, Plaintiff asserts Marshall further retaliated for the same reason by moving forward with Jane Roe's complaint. Given these allegations, Plaintiff clearly has alleged he engaged in a protected activity under Title IX, and after engaging in that activity, Marshall took retaliatory action against him. Therefore, the Court finds Plaintiff has sufficiently alleged a cause of action for retaliation in Count I against Marshall.[9]

---

[8] Title IX also requires the University be a recipient of federal financial assistance. 20 U.S.C. § 1681(a). The parties do not dispute that Marshall is a federally-funded institution.

[9] Defendants also cite *Trudeau v. Univ. of N. Texas*, 2020 WL 4745752 (E.D. Tex. July 14, 2020), *aff'd sub nom. Trudeau v. Univ. of Texas by & through its Bd. of Regents,* 861 F. App'x 604 (5th Cir. 2021). However, the Court finds *Trudeau* clearly distinguishable from the current case. In *Trudeau*, the district court dismissed a university professor's Title IX retaliation claim because the professor alleged that the outcome of an investigation into his conduct was "predetermined" "to place the needs of alleged female victims over those of the male accused

**2.**
**Count II**
**Selective Enforcement under Title IX**

Next, in Count II, Plaintiff alleges that Defendant Marshall selectively enforced its Title IX policies against him on the basis of his sex. Unlike Count I, Count II appears to be a claim consistent with *Yusuf's* second category of causes of action where a student alleges that, regardless of guilt or innocence, a university based the severity of a punishment and/or the initiation of a proceeding upon the student's gender. *Yusuf*,  35 F.3d at 715. Recently, however, some courts, including the Fourth Circuit, have simplified *Yusuf's* categorical distinction and merely ask "do the alleged facts, if true, raise a plausible inference that the university discriminated against [the student] 'on the basis of sex'?" *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019); *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236-37 (4th Cir. 2021) (adopting Seventh's Circuit's approach).

In *Sheppard*, the Fourth Circuit found the Seventh Circuit's reasoning more aligned with the text of Title IX. 993 F.3d at 236; 20 U.S.C. § 1681(a)). Nevertheless, the Fourth Circuit added that it saw "no inherent problems with the erroneous outcome and selective enforcement theories identified in *Yusuf*," and it recognized that a plaintiff could state a plausible claim under either of these theories with sufficient facts. *Id*.; *see also Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. June 13, 2023)) (stating "the so-called "erroneous outcome"

---

and to pander to the #MeToo movement." *Id*. at *4 (citation omitted). The court found this allegation undercut the professor's claim that his participation in the investigation was retaliatory because, according to the complaint, his "fate was sealed as soon as his students complained." *Id.* In other words, his participation in the process had no impact on the outcome. *Id.* On the other hand, Plaintiff's claim of retaliation in this case is that Jane Roe's complaint was filed and pursued because he participated in the Title IX process and successfully got the other claims dismissed.

and "selective enforcement" theories, . . . are two accepted ways to plead a Title IX employment discrimination claim" (citation omitted)). The Fourth Circuit emphasized that the critical factor in a Title IX claim is that a plaintiff has adequately alleged "but for" causation "between the student's sex and the university's challenged disciplinary proceedings." *Id*. at 236-37; *Kashdan*, 70 F.4th at 701 (holding "[t]o state a selective-enforcement claim, a plaintiff must plausibly allege that regardless of his guilt or innocence, his gender was a but-for cause of the severity of the sanctions or of the decision to initiate the challenged disciplinary proceeding in the first place" (citations omitted)). In other words, to state a claim under Title IX, a plaintiff must allege facts, assuming their truth, that "raise a plausible inference that the university discriminated against [the student] on the basis of sex." *Id*. at 235 (citation omitted).

In their motion, Defendants argue Plaintiff has failed to allege the necessary "but for" nexus between his sex and Marshall's actions. However, courts have recognized that "[e]vidence of 'clear procedural irregularities' can support a plausible inference of sex discrimination." *Doe v. University of Va.*, 2023 WL 2873379, at *5 (W.D. Va. Apr. 10, 2023) (quoting *Doe v. Oberlin Coll.*, 963 F.3d 580, 586–88 (6th Cir. 2020) (other citation omitted)). It is not enough for a plaintiff to simply identify mistakes or imperfections in an investigation, but "if procedural irregularities are sufficiently numerous, lopsided, and/or important, they can sometimes support an inference of sex discrimination." *Doe v. University of S. Ind.*, 43 F.4th 784, 793 (7th Cir. 2022) (citations omitted). Stated another way, "procedural irregularities may support a finding of sex bias under Title IX if, in light of all the circumstances, a fact-finder is convinced that the defendant deviated from proper procedures not because of human error but by design, to achieve covertly what it could not do openly: discriminate against the plaintiff on the

basis of his sex." *Id*. The more irregularities there are or the more serious they become, it seems less likely the errors were benign missteps. *Id*. (citation omitted).

Here, Plaintiff not only has alleged a striking number of procedural errors, but also instances in which he claims Marshall selectively enforced its Title IX polices against him on the basis of his sex. These instances include, but are not limited to:

  a.  Allowing the Investigator to abandon the "neutral, fact-finding process" and to usurp the role of the Hearing Panel by resolving disputed facts;

  b.  Undermining the presumption of non-responsibility by presenting the Hearing Panel with an Investigation Report concluding that the Plaintiff was responsible for misconduct before the Hearing Panel had received any evidence;

  c.  Ruling that the Hearing Panel can consider testimony not subject to cross examination;

  d.  Denying a motion to continue the disciplinary hearing despite Jane Roe's failure to provide the required witness list;

  e.  Granting Jane Roe's *ex parte* request to testify remotely, without allowing the Plaintiff an opportunity to object;

  f.  Allowing Title IX Coordinator Debra Hart to continue presiding over the complaint after being identified as a fact witness;

  g.  Creating a conflict of interest by appointing an Investigator who is the direct supervisor of Jane Roe's Title IX Advisor;

  h.  Ignoring the testimony of the lone non-party eye-witness to the alleged misconduct solely because she was in a romantic relationship with the Plaintiff, while deeming the testimony of Jane Roe's boyfriend to be credible;

  i.  Relying on evidence of "prior conduct" to establish that the Plaintiff acted in accordance therewith;

    j.   Relying on personal opinions and statements about which witnesses had no personal knowledge;

    k.   Relying on highly prejudicial instances of alleged misconduct totally unrelated to the allegations in the complaint;

    l.   Failing to consider relevant evidence provided by the [P]laintiff;

    m.  Failing to draw any adverse inference from the Complainant's destruction of relevant electronic evidence;

    n.   Denying the Plaintiff his right to pose questions to witnesses and suggest additional avenues for investigation;

    o.   Improperly penalizing the Plaintiff and his witnesses for exercising their rights not to participate in certain aspects of the investigation;

    p.   Recommending a finding of "no responsibility" in the Plaintiff's cross-complaint alleging retaliation by Roe, despite Roe's admission that her knowledge of the Plaintiff's prior Title IX activity was the "sole reason" she filed her belated complaint; and

    q.   Failing to complete its investigation with a "reasonably prompt" timeframe[.]

*Amended and Suppl. Compl.* ¶230. Additionally, Plaintiff claims that, although the University imposed a mutual no-contact order between him and Jane Roe, Ms. Roe was permitted to attend required classes in person, while he was not, and the order made it very difficult for him to even schedule his classes. *Id*. ¶¶186-87.


      Upon review, the Court finds these allegations and the other allegations in the proposed Amended and Supplemental Complaint indicates numerous, lopsided, and often significant procedural defects. These allegations easily raise an inference that Marshall

selectively enforced its policies against Plaintiff not by simple human error but, instead, on the basis of his sex. Therefore, the Court finds Count II survives Defendants' futility argument.[10]

**3.**
**Count III**
**Procedural Due Process**

In Count III, Plaintiff alleges that Defendant Hart violated his procedural due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendant Hart employed constitutionally inadequate procedures during the investigatory and disciplinary process that deprived him of his "'property' interest in the continuation and completion of his medical education at Marshall." *Amended and Suppl. Compl.* ¶¶241, 245. Plaintiff claims that Defendant Hart's wrongful acts caused him to medically withdraw from school, place his education on hold, suffer reputational harm, and lose social, educational, career, and future earnings opportunities. *Id.* ¶¶248-52.

Relying upon *Sheppard*, Defendants summarily argue Plaintiff's claim cannot survive because he is still pursuing his degree, was not held responsible or disciplined for any violations, and his "mere [alleged] violations of . . . school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claim." *Sheppard*, 993 F.3d at 239 (internal quotation marks and citation omitted; brackets added; ellipses in *Sheppard*).

---

[10]Defendants also cite *Clark v. Liberty Univ., Inc.*, No. 6:20-cv-58, 2021 WL 1827256 (W.D. Va. May 7, 2021), for the proposition that procedural deficiencies without ultimate discipline are not enough. However, the plaintiff in *Clark* alleged a Title IX claim under *Yusuf's* "erroneous outcome theory," and the district court held that the plaintiff's claim failed because the University did not find the plaintiff responsible or impose any sanctions or discipline against him. 2021 WL 1827256, at *7. As previously stated, Plaintiff in this case has not made an "erroneous outcome" claim under Title IX. Rather, he claims in Count II that Title IX was selectively enforced against him based on his sex which resulted injuries.

Therefore, Defendants maintain Plaintiff has not been deprived of any "life, liberty, or property" interest under the Fourteenth Amendment.

To state a procedural due process claim, a plaintiff must allege "deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law.*" *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 80 (4th Cir. 2016) (internal quotation marks and citation omitted; italics original). As the Fourth Circuit has more fully explained, a plaintiff must sufficiently plead (1) "a constitutionally cognizable life, liberty, or property interest," (2) a "deprivation of that interest was caused by some form of state action," and (3) "the procedures employed were constitutionally inadequate." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (internal quotation marks and citations omitted). The Fourteenth Amendment does not create a protected property interest, "but rather [it] must be created or defined by an independent source." *Sheppard*, 993 F.3d at 239 (internal quotation marks and citation omitted). Additionally, such a "property interest must be more than a mere unilateral expectation of it or abstract need or desire for it, . . . [the plaintiff] must show a state created property interest in continued enrollment at a public education institution exists in [the state]." *Id.* (internal quotation marks and citations omitted)).

In West Virginia, it has long been recognized that a student has "a sufficient property interest in the continuation and completion of his medical education to warrant the imposition of minimal procedural due process protections." *Evans v. West Virginia Bd. of Regents*, 271 S.E.2d 778, 782 (W. Va. 1980) (citations omitted); *Al-Asbahi v. West Virginia Univ. Bd. of Governors*, No. 1:15-cv-144, 2017 WL 402983, at *11 (N.D. W. Va. Jan. 30, 2017),

aff'd, 724 F. App'x 266 (4th Cir. 2018) (quoting *Evans*). Although both the Supreme Court and the Fourth Circuit also have "assumed, without actually deciding, that university students possess a constitutionally protectable property right in their continued enrollment in a university," the Fourth Circuit has held that "mere violations of . . . school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claim." *Sheppard*, 993 F.3d at 239 (internal quotation marks and citations omitted). Thus, even if the Court accepts that Plaintiff had a property interest and Defendant Hart deprived him of that interest, he still must plausibly allege constitutionally inadequate procedures were employed.

In Count III, Plaintiff specifically alleges the following procedural errors in support of his claim:

> 246. Defendant Hart violated Plaintiff's procedural due process rights by denying him fair and impartial investigators and adjudicators and by restricting his ability to present a full and fair defense against Jane Roe's complaint, among many other acts and omissions described above.

> 247.  Plaintiff was denied due process because, among other things, the complaint against him has not been adjudicated in a timely manner; the rules applicable to the proceeding against him were not followed; Plaintiff has been permitted a limited right of cross-examination, including by arbitrarily refusing an in-person hearing; having a member of the Review Panel with an incurable conflict of interest due to her service as a member of the Defendant Marshall University Board of Governors; refusing to provide Plaintiff with a list of witnesses to be called by Jane Roe in the time required under the Policy; having the Title IX coordinator Defendant Hart repeatedly giving the appearance of support for Doe, including by refusing to continue the date of the review hearing despite the presence of good cause (the manner and timing of the hearing panel); and otherwise being thwarted from presenting a meaningful defense in the proceedings overall.

*Amended and Suppl. Compl.* ¶¶246-47.  The Fourth Circuit has never precisely defined what type

of due process a student is entitled. Generally, in cases of a long-term suspension or expulsion, a

student has "a procedural due process right to notice and a hearing." *Doe v. The Citadel*, No.

2:21-cv-04198-DCN, 2022 WL 2806473, at *6 (D. S.C. July 18, 2022), aff'd sub nom. *Doe v.*

*The Citadel*, No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023) (citations omitted). Yet,

"a student's due process rights may be satisfied by something less than a trial-like proceeding."

*Id.* (internal quotation marks and citations omitted). As further guidance, the district court in *The*

*Citadel* also relied upon a nonexclusive list of procedural due process benchmarks a student may

be entitled to receive in student disciplinary proceedings. These are:

> (1) the student must be notified before the hearing of the charges
> against him; (2) he is entitled to the names of the witnesses against
> him and either a summary of their testimony or the opportunity to
> confront and cross examine these witnesses; (3) he has the right to
> be heard in his own defense and to be present and present evidence
> on his own behalf; and (4) serious disciplinary action should be
> based upon ample evidence such that the decision is not arbitrary
> or capricious.

*Id.* at *8 (quoting *Vega v. Saleeby*, 2:04-cv-0023-18, 2004 WL 3334816, at *6 (D. S.C. July 12,

2004)).

In considering this guidance, the Court initially recognizes that Plaintiff was

neither suspended nor expelled nor, for that matter, did the process result in a hearing ever being

held. Instead, Plaintiff asserts Defendants' actions caused him to withdraw from the university,

defer his enrollment in the BS/MD program for one year, and to enter into the voluntary

agreement with Jane Roe to prevent him from being unfairly disciplined. Significantly, however,

Plaintiff's withdrawal, deferment, and entry into the voluntarily agreement all occurred months

after the University agreed to redo the entire investigation and disciplinary process. Although

Plaintiff complains that the process was seriously flawed, many of Plaintiff's complaints (i.e., denying him the right to cross-examination, denying the right to present a full and fair defense, denying him an in-person hearing, and failure to timely provide him with a list of witnesses) became irrelevant long before he withdrew from the University because the hearing was never held. Additionally, many of Plaintiff's other complaints (i.e., timeliness and not following the applicable rules) are based on violations of the Marshall's policies, which the Fourth Circuit has stated "are insufficient by themselves to implicate the interests that trigger a federal due process claim." *Sheppard*, 993 F.3d at 239. Moreover, in determining whether Plaintiff has alleged a plausible procedural due process claim, the Court is mindful that "[t]he amount and type of process due is dependent on the nature of the interests at stake." *Doe v. The Citadel*, 2022 WL 2806473, at *6 (citing *Goss v. Lopez*, 418 U.S. 565, 575–76 (1975)).

Here, although the interests at stake are notable, the Court finds they are not as serious as if Plaintiff had been expelled and, at least arguably, subjected to a long-term suspension. Thus, the Court finds the amount of process due Plaintiff cannot be more than what should be afforded a student who actually goes through the hearing stage of a student disciplinary process and is suspended or expelled from a university. The Court has no doubt that Plaintiff feels wronged by the process and procedures employed; however, not every wrong rises to a level of a procedural due process constitutional violation. Upon review, the Court finds Plaintiff's allegations describe wrongs, but those wrongs are insufficient to state a plausible due process claim. Therefore, the Court holds Plaintiff cannot proceed on his current procedural due process claim in Count III.

**4.**
**Count IV**
**Equal Protection**

In Count IV, Plaintiff alleges a violation of his equal protection rights by Defendant Hart. The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must . . . demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The command that "all persons similarly situated should be treated alike"[11] "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citation omitted). "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) (citations omitted). To demonstrate that a plaintiff and the comparator are "similarly situated," the plaintiff "'must show an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s]'" himself." *Willis v. Town of Marshall, N. Carolina*, 275 F. App'x 227, 233 (4th Cir. 2008) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006); alteration made to bracketed material).

In this case, Jane Roe filed a Title IX complaint against Plaintiff for sexual assault and, thereafter, Plaintiff filed a Title IX complaint against Jane Roe for retaliation. Although Roe

---

[11] *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citation omitted).

-23-

and Doe made different allegations against one another, Plaintiff argues they are "similarly situated" because they were both students, they both filed Title IX actions, and they should have been treated equally under Marshall's disciplinary policies. Instead, Plaintiff claims that, at every step, Roe was intentionally treated much more favorably than he was based upon his sex. Upon consideration of Plaintiff's arguments, the Court finds Plaintiff's allegations are sufficient to state a plausible equal protection claim and, thus, denies Defendants' arguments the claim is futile.[12]

**5.**
**Count VI**
**Aiding and Abetting Violation**
**of West Virginia's Human Rights Act**

In Count VI, Plaintiff alleges that Defendant Hart, in her role as the Title IX Coordinator, aided and abetted a discriminatory practice by "provid[ing] substantial assistance and encouragement to the discriminatory conduct of Marshall in depriving Plaintiff of his legal rights on the basis of sex." *Amended and Suppl. Compl.* ¶¶268, 270. Defendants argue this claim is futile because Plaintiff "has not alleged any facts that show discrimination on the basis of sex[.]" *Defs.' Sur-Reply*, at 18, ECF No. 77. However, as stated above, the Court has found Plaintiff has plausibly alleged sexual discrimination claims. Therefore, the Court denies Defendants' futility arguments as to Count VI.

---

[12]In support of their position, Defendants cite *Doe v. University of Virginia*, No. 3:22-CV-00064, 2023 WL 2873379, *7 (W.D. Va. Apr. 10, 2023), for the position that someone accused of sexual assault is not similarly situated to the accuser for equal protection purposes. As a general matter, the Court does not disagree with this assertion. However, this case is distinguishable because *Doe v. University of Virginia* did not involve a cross-complaint. Here, Plaintiff asserts that Jane Roe received much more favorable treatment under Marshall's policies despite the fact they were both students and both filed complaints under Title IX. Plaintiff argues that he should have been afforded the same basic level of equity under Marshall's policies as Jane Roe, but he did not because he is male.

**6.**
**Count VIII**
**Intention Infliction**
**of Emotional Distress**

Lastly, Defendants argue Defendant Hart is entitled to qualified immunity for Plaintiff's state law claim of intentional infliction of emotional distress in Count VIII. As this Court recently explained "[t]he Supreme Court of Appeals of West Virginia has held that West Virginia—or its agencies, officials, or employees—is entitled to qualified immunity where the allegedly injurious conduct constitutes a discretionary governmental function unless 'plaintiff has demonstrated that [the relevant] acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive.'" *Barnett v. Cabell Cnty. Comm'n*, Civ. Act. No. 3:22-0203, 2023 WL 2602509, at *11 (S.D. W. Va. Mar. 22, 2023) (quoting *West Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 766 (W. Va. 2014)); Syl. Pt. 8, in part, *Parkulo v. West Virginia Bd. of Prob. & Parole*, 483 S.E.2d 507, 510 (1996) ("There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive."). In the proposed Amended and Supplemental Complaint, Plaintiff expressly has alleged "Defendant Hart's conduct was "fraudulent, malicious, or otherwise oppressive" by using her position as the Title IX Coordinator to discriminate against him by "generat[ing], without authorization, a new disciplinary complaint against [him] after [he] successfully obtained dismissal of prior such complaints, repeatedly fail[ing] to follow[] Marshall's own Title IX policies and procedures," and by refusing to provide him "a full and fair disciplinary process." *Amended and Suppl. Compl.* at ¶¶279, 282. Given this allegation, the Court finds Defendants' argument Defendant Hart is immune from Plaintiff's IIED claim is completely without merit.

**IV.**
**CONCLUSION**

Accordingly, for the foregoing reasons, the Court finds Plaintiff has standing to maintain this action and may proceed on Counts I, II, IV, VI, and VIII. On the other hand, the Court agrees with Defendants that Plaintiff has not plausibly alleged a procedural due process claim in Count III. Therefore, the Court **GRANTS** Plaintiff's Motion for Leave to File Amended and Supplemental Complaint (ECF No. 69), but finds Plaintiff cannot proceed on Count III. As Defendants' Motions to Dismiss are directed at the original Complaint and there is a new operative Complaint, the Court **DENIES** those motions **AS MOOT.** ECF Nos. 9, 11.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:      July 19, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE